THE FIRST NATIONAL BANK OF WEBSTER CITY, IOWA, Appellant, v. ACME CO-OPERATIVE BRICK & TILE COMPANY et al., Appellees.

ATTACHMENT: Discharge—Saving Lien by Appeal—Failure to Perfect within Two Days. An attachment lien lives two days after an order of discharge, provided plaintiff, at the time of the order, announces his intention to appeal therefrom. All portions of the lien not preserved by perfected appeal within said two days are wholly lost. (Secs. 3931, 3932, Code.)

1

PRINCIPLE APPLIED: An attachment was levied on a brick plant. Neither the sheriff's return, the pleadings, nor the evidence

even approximated the kind, quantity, or value of the attached personal property. The cause was transferred to the equity calendar and there tried. Within two days after the discharge of the attachment, an appeal was perfected, specially stating that no appeal was taken from the discharge of the ''real estate, buildings, machinery, tools and appurtenances.'' Six months later, a supplemental appeal was perfected, attempting to largely broaden the first appeal. *Held,* the first appeal left no question for the consideration of the appellate court on the attachment branch of the case.

**ATTACHMENT:** Discharge—Receivership—Effect on Attachment
2 **Lien.** The necessity to perfect within two days an appeal from an order discharging an attachment, in order to preserve the lien, is not affected by the fact that pending the litigation, a receiver for the property was appointed, ''subject to the attachment lien.'' In such case, the receivership does not supplant the attachment.

**APPEAL AND ERROR:** Matter Not in Issue—Relief. The court
3 cannot assume to accord relief on matters not in issue—for instance, an attaching plaintiff, pleading at all times in defense of his right to hold certain property under an attachment, cannot be awarded the proceeds of collateral securities, not covered by the levy, but turned over to him after the attachment, and later delivered by him, on demand, to a receiver of the property, no issue as to this collateral being made in the pleading.

**BILLS AND NOTES:** Signature—Genuineness—When in Issue—Un-
4 verified Answer. An unverified answer, denying authority to execute notes, does not put the genuineness of the signature thereof in issue. (Sec. 3640, Code.)

**APPEAL AND ERROR:** Equitable Relief beyond Pleading—No
5 Ground for Complaint. The decreeing of insufficient equitable relief, *entirely beyond the pleading,* furnishes no ground for complaint by the party to whom decreed. The party, not having asked *any* relief, cannot complain because the court did not grant greater relief than it did.

PRINCIPLE APPLIED: Plaintiff brought an action in attachment on certain notes and at all periods of the proceeding stood strictly on that right. The defense, by interveners, was that the defendant in attachment had no interest in the property. The cause was tried in equity. The court held with interveners, but also found that a portion of the money for which plaintiff's

notes were given was used in discharging liabilities against the attached property and made plaintiff a creditor of the owner of the property to such estimated extent. Plaintiff had prayed for no such relief. *Held*, plaintiff could not complain.

**VENDOR AND PURCHASER:** Sales—Transfers on Condition—Conditions Unfulfilled—No Attachable Interest Conveyed. The formal conveyance of property by the owner, when no credit is intended, and on condition that the owner be at once paid therefor, which condition is not fulfilled, creates no such right of property in the tranferee as can be levied on by his attaching creditors.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, NOVEMBER 28, 1914.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION at law upon promissory notes aided by attachment. Interveners appeared, claiming the attached property. Upon trial had, there was a decree discharging the property. The plaintiff appeals.—*Modified* and *Affirmed*.

*Wesley Martin* and *W. J. Covil*, for appellants.

*D. C. Chase*, for defendant, Acme Co-operative Brick & Tile Company, and interveners, Webster City Brick & Tile Company, Alice H. Soule.

*A. N. Boeye* and *J. L. Kamrar*, for interveners, Hamilton County State Bank, Ethel C. Hathway, G. P. Christianson, B. F. Keltz, John Whaley, appellees.

EVANS, J.—The plaintiff brought its action at law upon two promissory notes. It sued out a writ of attachment which was levied upon certain property as the property of the principal defendant, Acme Co-operative Brick & Tile Company.

The Webster City Brick & Tile Company and certain of its stockholders and creditors appeared in the action as

interveners. They pleaded that the attached property was not the property of the attachment defendant, and that it had no attachable interest therein, but that the same was the property of the Webster City Brick & Tile Company.

The petitions of intervention were all denied by the plaintiff. The attached property was a certain brick and tile plant located at Webster City, together with all its appurtenances and stock on hand. This property comprised at one time all the assets of the Webster City Brick & Tile Company. The story preceding the attachment is involved in considerable dispute, and in a maze of attempted proceedings. The net result, however, is quite simple.

Prior to the fall of 1911, the Webster City Brick & Tile Company was an operating corporation engaged in the business indicated by its name. It was capitalized for $90,000, and was supposed to have property of equal or greater value. Its indebtedness, however, was about $50,000. The stock was all owned in one family, spoken of in the record as the "Soule family." This included Mrs. Carey, a daughter of the family, and her husband. The Soules desired to sell the property and to liquidate the affairs of the corporation and to retire from business.

Defendant Ward was a promoter residing in Minnesota. He came upon the ground and proposed to carry out a scheme that would result in the sale of the plant and the retirement of the corporation. This scheme involved the organization of a new corporation, which should become the purchasing corporation. Ward proposed to find purchasers of the stock of the new corporation, and in that way to finance the purchase of the plant.

According to the contention of interveners, which was sustained by the decree of court, the purchasing company was to pay the specified debts of the selling company and was to pay to the Soule family the further sum of $100,000, or a total of $155,000.

The new company was organized under the laws of West

Virginia, upon an authorized capital of $250,000 preferred stock, and $250,000 common stock. The plan was to sell the preferred stock at par and to donate one share of common stock with each share of preferred stock. Ward employed a number of men who were to engage in the business of selling the stock. They came upon the ground and did so engage in attempted sales for a considerable period.

In pursuance of the plan, the selling company executed a formal deed of its plant and appurtenances to the new company, and the same was put of record. To protect the selling company in the interim, $155,000 of stock was issued in the new company and delivered in trust to the secretary of the selling company, the intention being that this should be released to purchasers as fast as the same should be sold. It was in this manner that the purchase money for the selling company was proposed to be procured.

The attempted enterprise never progressed any further. Not a dollar's work of stock in the new company was ever sold, although a large expense was incurred in paying salaries of salesmen, which was paid out of the assets of the selling company.

Ward was the president of the new company. He was active in its purported management. He had been active in the management of the plant before its actual transfer. Within a few weeks after the transfer of property was made to the new company, Ward procured loans from the plaintiff for the new company to the amount of $4,500, and gave the notes of the new company therefor, and endorsed the same himself. It is upon these notes that this suit was brought. As already indicated, the Webster City Brick & Tile Company and its creditors appeared as interveners. The substance of the pleading of the old corporation was that the deed of its property was delivered conditionally, and as a part of the transaction which was never completed. The substance of the condition was that the debts of the old corporation were to be paid, and the purchase price. Because of the failure of the

conditions and the failure of the contemplated scheme, it was pleaded, in effect, that no property ever passed to the new company, and that it had no attachable interest therein. Issue was taken by reply upon these allegations.

On behalf of plaintiff, it was contended that the agreement between the old company and the new was that the stockholders of the old should receive 155,000 shares of the stock of the new, and that they did receive the same, and evidence was introduced in support of this contention.

Because of the petitions of intervention, the trial court transferred the case to the equity side, and it was so tried. The decree was that the new company had no attachable interest in the attached property, and the same was released from the attachment and in effect was awarded to the old company. A receiver, however, had been appointed pending the litigation, and the decree awarded the property to such receiver, free from the attachment lien.

1. The plaintiff perfected an appeal within two days. The appeal, however, purported to be from a part of the decree only, and especially excepted other portions thereof.

1. ATTACHMENT: discharge: saving lien by appeal: failing to perfect within two days. The notice of appeal specified the exceptions as follows:

"Excepting that no appeal has been taken from that part of said decree discharging the real estate, buildings, machinery, tools and appurtenances attached from the lien of the attachment in said cause, and that said property be restored to H. M. Sparboe, Receiver, and that part of the decree directing the receiver to sell property, and no appeal is taken from the judgment against B. H. Ward. As to all other parts of the said findings, orders, judgment and decree, plaintiff has appealed to the Supreme Court of Iowa."

This notice of appeal was served on June 28, 1913. Subsequently, on November 28, 1913, a supplemental appeal was taken by the service of an additional notice. This pur-

ported to be an appeal from the decree with the following exception only:

"Excepting that no appeal is taken from that part thereof ordering the receiver to sell said property, and no appeal is taken from the judgment against B. H. Ward, and the rights of previous appeal reserved."

The attachment having been discharged by decree of the court, such discharge became absolute and conclusive, unless appealed from within two days, as provided by sections 3931 and 3932 of the Code. We cannot, therefore, review the order of discharge of the attachment, so far at least as it relates to the property excepted in the first notice of appeal.

It is contended for appellant, however, that there was personal property attached, being in the form of stocks on hand, and that this property was not included in the exception. This may be theoretically correct. But a further difficulty confronts us here.

The case is triable *de novo* here. We must try it upon the evidence in the record. It appears inferentially from some portions of the record that there was some personal property on hand; but we are unable to find definite evidence on the subject.

The sheriff's return on the writ of attachment contains the following reference thereto and no more: "And this levy also includes all of the clay products, brick and tile situated or being upon the said described land levied upon, both in the yards for the storage of brick and tile, and also in the kilns in which said brick and tile are burned."

We find nothing more definite than this either in the pleadings or in the evidence. There is nothing from which we could approximate the kind, quantity or value. No witness testified on the subject. Indeed, from the very nature of the issue made by the pleadings, there appeared to be no occasion for differentiating the property.

Under the issues as made, if the new company had an attachable interest in any of the property, it had such in all, and *vice versa*. We think, therefore, that when the appellant excepted from its first notice of appeal "that part of said decree discharging the real estate, buildings, machinery, tools and appurtenances attached," it left nothing to be reviewed on this branch of the case. The part of the decree thus referred to in the notice of appeal was as follows:

2. ATTACHMENT: discharge: receivership: effect on attachment lien.

"It is therefore, on this 28th day of May, 1913, ordered, adjudged and decreed that the attached property be discharged and fully released from any alleged lien by virtue of the writ of attachment herein; that said property be restored to H. M. Sparboe, who is acting as receiver, to be held as the property of the Webster City Brick & Tile Company; that said property and the proceeds thereof be held for the benefit of the creditors of the Webster City Brick & Tile Company, and for the benefit of the plaintiff to the extent hereinbefore stated, subject to further orders of this court."

There was no attempt at differentiation in the decree.

It is urged by the appellant that the sections of the statute above referred to have no application to the case because its attachment was supplanted by receivership, and that it now takes its rights through and under the receiver. Granting, without deciding, that the procedure could have taken that course, this was not done. The order appointing the receiver specially provided that the receiver took the property subject to the plaintiff's attachment lien and subject to his right of special execution, in case it should be found upon trial that the plaintiff had acquired an attachment lien. And this was made to apply specifically to the changing form of products in the course of operation of the plant. Plaintiff's attachment lien, therefore, continued in force until the final hearing and until the final decree. The final decree discharged it, and we see no escape from the sections of the statute above cited.

The order of sale issued to the receiver was issued in con-
nection with the order of discharge of the attachment, and was
hostile to the attachment. Such order of sale was excepted
from the notice of appeal in express terms. This only empha-
sizes the difficulty of attempting to differentiate between the
personal property and the realty on this appeal.

2. It is urged by appellant that it was entitled to recover
the proceeds of certain accounts which had been assigned to it
by Ward as president of the new company. It appeared in

3. Appeal and
error: matter
not in issue:
relief.

evidence that after the attachment suit was
begun, Ward assigned to the plaintiff a con-
siderable number of accounts as collateral
security to the debt, and that thereafter, the plaintiff turned
them over to the receiver upon his demand. As to this matter,
the pleadings presented no issue. In two of the petitions of
intervention, it was alleged that such assignment had been
made without authority. In answer to one of such petitions,
the plaintiff pleaded that it had turned the same over to the
receiver. No further reference was made to the subject by
any pleader.

The plaintiff stood at all times upon its petition as an
attaching plaintiff. All its answers to petitions of interven-
tion were defensive of its right to hold the attached property
under its attachment. The question, therefore, whether it was
entitled to hold its collateral security was not within the issues
made. The decree did not purport to pass upon the same.
The question, therefore, cannot arise upon this appeal.

3. Appellant complains because the court failed to enter
judgment upon the note against the principal defendant, the
Acme Company. The decree did not in terms discharge such

4. Bills and
notes: signa-
ture: genuine-
ness: when in
issue: unveri-
fied answer.

defendant, neither did it award plaintiff any
judgment against it. There was an evident
oversight one way or the other. We are in
some doubt as to whether the plaintiff ought
not to have brought the omission to the attention of the

trial court and obtained there a correction of the decree before presenting his appeal here.

There was evidence impeaching the authority of Ward to execute the notes in suit to the plaintiff on behalf of the company. This evidence tended to show that it was done without authority from the board of directors, and therefore in violation of the by-laws of the company. The difficulty, however, with the consideration of this evidence is that no issue was properly made by the defendant's answer on that question.

The principal defendant did file an answer denying the authority, but it was an unverified answer. The notes were set forth by copy in the petition. Under section 3640 of the Code, the signatures thereto were to be deemed genuine, unless denied "under oath". Under this section, therefore, there was no issue made as to the genuineness of the signatures. Presumptively, therefore, the plaintiff was entitled to a personal judgment against the makers of the notes.

On the other hand, under the finding of the decree, the Acme Company had no property. It was a mere name, a purported corporation without a stockholder and without a dollar of assets. The failure of the court to render judgment against it could not ordinarily have been prejudicial. It is conceivable that the adjudication itself might be important to the plaintiff in some contingencies. It is conceivable, also, that the money borrowed from the plaintiff by the corporation might have been invested in property which would constitute assets, and be subject to execution. But the testimony is undisputed that the money was not thus used, but that it was expended in the payment of liabilities of some kind already incurred. Inasmuch, however, as plaintiff was, upon the record, legally entitled to a judgment against the Acme Company, the decree will be modified in that respect.

4. There was evidence tending to show that a considerable portion of the funds borrowed from the plaintiff by the

new company was expended in discharging the liabilities of
the old. The trial court estimated the amount
so expended at one third thereof, and ordered
that to that extent, the plaintiff should be
deemed as a creditor of the old company, and
should share in the distribution of its assets at the hands of
the receiver. The appellant now complains that the amount
thus allowed by the trial court was materially less than the
amount shown by the evidence, and that the appellant ought
to have been permitted to share to greater extent in the distri-
bution of the assets of the old company.

5. Appeal and
error: equi-
table relief
beyond plead-
ing: no ground
for complaint.

We are confronted at this point also with the difficulty
that no such issue was made by the pleadings, and no such
relief was asked by the plaintiff. The order of the trial court
was equitable as far as it went, but it was beyond the plead-
ings. The plaintiff stood in court strictly as an attaching
plaintiff. No other relief was asked for in its petition. In
its answers to the petitions of intervention, it pleaded only
in defense of its right as an attaching plaintiff.

The question presented was primarily one of right of
property as between the two companies. If, as between them,
the purchasing company acquired no right of property, then
the right of a mere attaching plaintiff rose no higher than the
right of its debtor. And this was the only question made by
the pleadings. This is not saying that the plaintiff might not
have been entitled to some equitable relief as against the
selling company, and that it might not have been entitled to
make itself a creditor of such selling company to the extent
of the benefits conferred upon it. But this could only be done
by appropriate pleadings and procedure to that end. The
equities, therefore, extended to the plaintiff in the decree
went beyond the pleadings, and the appellant is in no position
to complain of its insufficiency.

In only one respect can we conceive of a possible prejudice
to the appellant, and that is that it may be precluded by the
adjudication from attempting to obtain further equitable

relief in the future. If it deems itself prejudiced in this respect, the decree will be modified at its election so as to eliminate this relief from the decree. Otherwise, the order in this respect will stand as made. Upon this record, we cannot review its correctness. Whether the suggested elimination would be legally effective to save to plaintiff any right to seek equitable relief hereafter is a question upon which we are neither called upon nor prepared to express opinion.

5. The foregoing disposes of the particular questions presented for our consideration. Because the appeal is from a part of the decree only, we cannot review the merits of the case as a whole. We may properly say, however, that upon consideration of the entire evidence, we are impressed that the contemplated transaction between the two companies was incomplete; that there was no intent on the part of the Soule family to extend credit to the new company or to purchase its stock; that the passing of the property of the old company to the new was done in the expectation of immediate payment therefor, through the promised sale of stock. As between the two parties, no right of property passed, the transaction contemplated being still incomplete.

6. Vendor and purchaser: sales: transfers on condition: conditions unfulfilled: no attachable interest conveyed.

Ordinarily, the rights of purchaser and seller, when no credit is extended, attach simultaneously, even though one deliver before the other. Of course, delay in the period of transition may give rise to equities in favor of innocent third parties. But a mere attaching plaintiff is not deemed such. It may give rise, also, to equities as between the parties themselves, but no such question is presented here.

The decree entered below will be modified as herein indicated, and in all other respects—*Affirmed*.

Ladd, C. J., Weaver and Preston, JJ., concur.